UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BETTY RUCKER, and others,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>SPOKANE COUNTY, a municipal corporation,<br><br>　　　　　Defendant. | No. CV-12-5157-LRS<br><br>**ORDER RE<br>MOTIONS FOR PARTIAL<br>SUMMARY JUDGMENT** |

**BEFORE THE COURT** are the Defendant's Motion For Partial Summary Judgment (ECF No. 14) and the Plaintiffs' Cross-Motion For Partial Summary Judgment (ECF No. 18). These motions were heard with oral argument on November 14, 2013. Andrew S. Biviano, Esq., argued for Plaintiffs. Michael T. Kitson, Esq., argued for Defendant.

**I. BACKGROUND**

This is a 42 U.S.C. §1983 class action. Plaintiff, Betty Rucker, asserts her federal 5th and 14th Amendment due process rights, and the rights of similarly situated class members, were violated by Defendant Spokane County when they were incarcerated for failing to pay legal financial obligations without a judicial inquiry regarding the reasons for their failure to pay. Furthermore, Plaintiff asserts that written waivers of such a hearing executed by her and others similarly situated were not executed knowingly, intelligently and voluntarily.

**ORDER RE MOTIONS FOR
PARTIAL SUMMARY JUDGMENT- 1**

Once an offender is no longer in the custody or under the supervision of the Washington Department of Corrections (DOC), county court clerks are statutorily empowered to enter into stipulated agreements regarding sanctions for violations of Legal Financial Obligations (LFOs) imposed by a court as part of a criminal sentence (i.e., a fine and/or restitution and/or reimbursement for court costs). RCW 9.94B.040(3)(a)(i). A clerk's office has a broad range of sanctions which it may impose, including jail time. These stipulated agreements are in the form of an "Order Enforcing Sentence-LFO" (OES) and are subject to judicial approval. RCW 9.94B.040(1). Each and every stipulated agreement must be submitted to the court and the prosecuting attorney, and must outline the violation or violations and the sanctions imposed. RCW 9.94B.040(3)(a)(ii). The court has the power to accept the agreement as written, or hold a hearing and modify the sanctions imposed, in which case the offender may withdraw from the stipulated agreement. *Id*. If an offender fails to comply with a stipulated agreement after judicial acceptance, the court may take action regarding the original non-compliance and may sanction non-compliance with the stipulated agreement as an additional violation. RCW 9.94B.040(3)(a)(iii).

Plaintiff was incarcerated by Defendant for failure to pay LFOs on five separate occasions in 2006, 2007, 2008, 2011 and 2013. On each of those occasions, Plaintiff was sentenced to jail pursuant to a stipulated OES. (ECF Nos. 16-6, 16-7, 16-8, 16-10 and 16-11). These orders were presented to her by the Spokane County Clerk while she was in custody. Each stipulated order included a finding that Plaintiff had willfully failed to pay financial obligations "as directed."

On each occasion that Plaintiff was sentenced to jail, a hearing was not conducted in which a court inquired into and made findings whether Plaintiff had

**ORDER RE MOTIONS FOR
PARTIAL SUMMARY JUDGMENT- 2**

the ability to pay her LFOs, whether she had made bona fide efforts to acquire the resources to pay, and, if necessary, whether alternative measures other than imprisonment were appropriate.

On the first four occasions, Plaintiff signed the OES beneath a statement that purported to be a waiver of her right to a hearing and her right to an attorney. It reads as follows:

> I have the right to be brought before the Court for a hearing, and to have an attorney present to represent me, and that the Court will appoint an attorney to represent me if I cannot afford one[.] [B]y my signature below[,] I hereby waive my right to an attorney and having read the above modification(s) and having agreed to the punishment imposed, agree to the entry of this order.

Plaintiff signed the 2006, 2007, 2008 and 2011 orders "pro se." Plaintiff was represented by the county public defender's office when she signed the 2011 order, and the same was true when she signed the 2013 order. Plaintiff was incarcerated pursuant to the 2013 order, although this order, unlike the others, did not include a purported waiver of rights.

On each of the stipulated orders, a "Court Collection Deputy" affixed his/her signature below the Plaintiff's signature indicating he/she had "advised the defendant of a right to a hearing, the right to have a lawyer at the hearing, the right to have a lawyer appointed at public expense if the defendant cannot afford a lawyer" and that he "witnessed the defendant affix his/her signature above after being advised of his/her rights."

Each of the stipulated orders was then subsequently submitted to a judge for approval as indicated by his/her signature on the order. Each of the stipulated orders also bears the signature of a deputy prosecuting attorney.

The singular issue presented by the parties' cross-motions for summary judgment is whether the Plaintiff and others like her can waive their rights to a a

**ORDER RE MOTIONS FOR
PARTIAL SUMMARY JUDGMENT- 3**

LFO hearing in which a court inquires into and makes findings whether the offender has the ability to pay the LFOs.

Defendant acknowledges that "[c]onvicted criminal defendants have a constitutional due process right to a hearing where the court inquires into the defendant's ability to pay a [LFO] prior to being imprisoned for failing to make payments." Defendant asserts, however, that "[c]ase law, common sense, and fundamental fairness dictate that the right to an LFO hearing, like virtually all rights whether Constitutional or not, can be knowingly, intelligently, and voluntarily waived."

On the other hand, Plaintiff asks the court to hold "that parties cannot waive a court's constitutional duty to inquire into an offender's ability to pay legal financial obligations prior to imposing sanctions for non-payment" and that "the County has violated the Fourteenth Amendment by incarcerating Plaintiff for failure to pay legal financial obligations without inquiring into, and making findings on her, ability to pay."

## II. DISCUSSION

Over 30 years ago, in *Bearden v. Georgia*, 461 U.S. 660, 672, 103 S.Ct. 2064 (1983), the United States Supreme Court held:

> In [probation] revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interest in punishment and deterrence may the court imprison

**ORDER RE MOTIONS FOR PARTIAL SUMMARY JUDGMENT- 4**

> a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.

Since then, no court has directly confronted the issue of whether the *Bearden* inquiry can be waived. No court has explicitly held the inquiry cannot be waived. Nor has this court found any case implicitly suggesting it cannot be waived, including *State v. Nason*, 166 Wn.2d 936, 233 P.3d 848 (2010), as discussed below. On the other hand, the court has found at least two cases suggesting it can be waived under the proper circumstances.

In *De Luna v. Hidalgo County, Texas*, 853 F.Supp.2d 623 (S.D. Tex. 2012), two students, on behalf of themselves and a purported class, brought a 42 U.S.C. §1983 action against state court magistrates and Hidalgo County alleging violation of federal due process and equal protection rights because of their placement in jail for unpaid fines or costs related to violations of the Texas Education Code. The federal district court held there was a violation of due process because of the county's policy of jailing individuals with fine-only misdemeanor offenses who failed to directly inform the arraigning magistrate of their indigency. According to the court, "the absence of any inquiry into a defendant's indigency unless the defendant 'raises' it of his or her own accord does not provide the process due." *Id*. at 648. Based on its review of Fifth Circuit and Supreme Court precedent, including *Bearden*, the district court concluded it is not necessary for a defendant to affirmatively raise his/her indigency in order to trigger the court's obligation to inquire into indigency before ordering a defendant jailed for nonpayment. The district court found that "[t]he process in place in Hidalgo County clearly risks that the defendants who do not think to 'speak up' during arraignment about their

**ORDER RE MOTIONS FOR PARTIAL SUMMARY JUDGMENT- 5**

inability to pay fines may be jailed solely by reason of their indigency, which the Constitution clearly prohibits." *Id*. Instead "[d]ue process requires a forum in which defendants' reasons for failing to pay are considered before committing them to jail." *Id*.

Nevertheless, the defendants in *De Luna* argued the county's policy did not violate the named plaintiffs' constitutional rights because the plaintiffs had waived their right to an indigency determination by waiving the rights of which they were informed and pleading guilty to the offense. Rather than holding a waiver was absolutely precluded, the court concluded the evidence of record showed there had been no effective waiver:

> [N]either De Luna nor Diaz can be held to have 'waived' his or her right to an affirmative indigency determination by waiving the right to counsel at arraignment. Generally speaking, to be enforceable, a waiver of constitutional rights must be 'voluntary, knowing, and intelligently made," or 'an intentional relinquishment or abandonment of a known right or privilege." *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185-86, 92 S.Ct. 775, 31 L.Ed.2d (1972) (internal quotations and citations omitted). "[A] waiver of constitutional rights in any context must, at the very least, be clear." *Fuentes v. Shevin*, 407 U.S. 67, 95, 92 S.Ct. 1983 (1972). The Court cannot accept that either Plaintiff's waiver of various constitutional rights of which they were explicitly informed constitutes a waiver of their right to a process in which the reasons for their inability to pay would be considered.

*Id*. at 649.[1]

*Boyd v. Murphy*, 2008 WL 2486025 (E.D. Mo. 2008), involved a 28 U.S.C.

---

[1] *De Luna* bears some similarity to *State v. Stone*, 165 Wn.App. 796, 268 P.3d 226 (2012), where the defendant executed a general waiver of rights, including his right to an attorney, but the waiver did not address his right to an LFO hearing at which there would be judicial inquiry into the reason for his failure to pay.

**ORDER RE MOTIONS FOR PARTIAL SUMMARY JUDGMENT- 6**

§2254 habeas petition filed by a state prisoner who asserted the sentencing court violated his Due Process and Equal Protection rights by revoking his probation due to his indigence and his inability to pay restitution, notwithstanding the existence of alternatives presented to the court. The court denied the petition, finding the Petitioner had waived the *Bearden* requirements:

> The court concludes that although the record does not reflect compliance by the sentencing court of the *Bearden* requirements, habeas relief must nonetheless be denied in this case because it is reasonable to find that Petitioner waived any claim to the very rights he now claims were violated. Just as a criminal defendant may waive constitutional rights when pleading guilty [citation omitted], a probationer may waive the elements of due process owed to him at a probation revocation hearing and may waive the hearing altogether. [Citation omitted].

*Id.* at *5.

Constitutional rights are presumptively waivable. *United States v. Mezzanatto*, 513 U.S. 196, 200-01, 115 S.Ct. 797 (1995); *States v. Humphries*, 170 Wn.App. 777, 789, 285 P.3d 917 (2012). This court concludes the Supreme Court in *Bearden* did not foreclose the possibility that a defendant could effectively waive his constitutional right to have a court inquire into the reasons for his failure to pay a legal financial obligation. The court agrees with Defendant that *Bearden* is simply an extension of the due process rights the Supreme Court earlier enunciated in *Morrisey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593 (1972), and *Gagon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756 (1973), with regard to parole and probation revocation proceedings. Those rights- the right to a preliminary hearing to establish probable cause and a final hearing to determine whether there has been a violation- are waivable as explicitly recognized in Fed. R. Crim. P. 32.1, "Revoking or Modifying Probation or Supervised Release." 32.1(b)(1)(A) states "[t]he person may waive the [preliminary] hearing." 32.1(b)(2) states that

**ORDER RE MOTIONS FOR
PARTIAL SUMMARY JUDGMENT- 7**

"[u]nless waived by the person, the court must hold the [final] revocation hearing within a reasonable time in the district having jurisdiction." This court does not believe the fact an alleged violation involves the failure to pay a legal financial obligation precludes an individual from effectively waiving his right to either a preliminary or a final revocation hearing. Absent an effective waiver, however, the court is obliged- has a duty- to hold those hearings and, where the alleged violation involves a failure to pay a legal financial obligation, must inquire into the reasons for the failure to pay. The constitutional right to this inquiry gives rise to the court's duty to make the inquiry. The duty does not exist independently of the right, however. Therefore, if the right is knowingly, intelligently and voluntarily waived, the court is not obliged to make the inquiry. Nevertheless, the court has a duty in the first instance to ensure a waiver is knowing, intelligent and voluntary.[2]

While the court will not go as far as Defendant in asserting that *State v. Nason* indicates a *Bearden* inquiry can be waived via the stipulated agreements authorized under Washington law, the court agrees that *Nason* does not suggest a *Bearden* inquiry can never be waived. At issue in *Nason* was an "auto-jail"

///
///

---

[2] For example, in criminal cases, the preferred procedure to insure that a waiver of the right to counsel is knowingly and intelligently made is for the court to conduct a hearing to determine if the defendant has an understanding of the nature of the charges against him, the possible penalties, and the dangers and disadvantages of self-representation. *United States v. Lorenzo*, 995 F.2d 1448, 1457 (9th Cir.), *cert. denied*, 510 U.S. 881, 114 S.Ct. 225 (1993).

**ORDER RE MOTIONS FOR
PARTIAL SUMMARY JUDGMENT- 8**

provision in a court order. This is not an issue in the captioned case.[3] It is well settled after *Nason* that "auto-jail" provisions violate due process. In *Nason*, the auto jail provision stated: "The defendant shall pay $25 or more monthly, effective 8-15-06. The case is to be reviewed 1/10/07 for compliance. If the defendant has not complied with the payment schedule, nor filed a motion with the court for a stay by the review date, the defendant is to report to jail on 1/17/07 by 4:00 p.m. to serve 60 days in jail." The Washington Supreme Court held this violated due process: "Because due process requires the court to inquire into Nason's reason for nonpayment, and because the inquiry must come at the time of the collection action or sanction, ordering Nason to report to jail **without a contemporaneous inquiry** into his ability to pay violated due process." 168 Wn.2d at 936, 945-46. (Emphasis added). The "auto-jail" provision amounted to a waiver of a future determination of Nason's ability to pay. This was

///
///
///
///
///

---

[3] The jail time at issue here is not that which the Plaintiff served pursuant to the "auto-jail" provisions contained in the agreed orders prior to July 30, 2009. In *State v. Nason*, 168 Wn.2d 936, 233 P.3d 848 (2010), the Washington Supreme Court deemed such provisions to be in violation of due process because jail time was imposed based on a hearing that had occurred months earlier.

**ORDER RE MOTIONS FOR
PARTIAL SUMMARY JUDGMENT- 9**

impermissible.[4] The issue with regard to Ms. Rucker is whether through a stipulated order she could waive a "contemporaneous inquiry" into, and a present determination of, her financial ability to pay, and if so, what was necessary to accomplish that waiver. *Nason* does not answer these questions and does not hold that *a Bearden* inquiry can never be waived.

This court holds that it is possible for a criminal defendant to knowingly, intelligently and voluntarily waive a contemporaneous inquiry into whether he or she has the financial ability to pay an LFO, and to stipulate to a finding that his or her failure to pay is willful instead of the result of indigence. As *Bearden* recognizes, the government has a valid penological interest in incarcerating individuals who willfully refuse to pay their LFOs or fail to make sufficient bona fide efforts legally to acquire the resources to pay. If a defendant knowingly, intelligently and voluntarily stipulates that his or her failure to pay is willful, there is no need for the court to make specific findings regarding his or her indigence, whether he or she has made bona fide efforts to acquire the resources to pay, or whether alternative measures to imprisonment are available.

The critical issue is what process is required to knowingly, intelligently and voluntarily waive a *Bearden* inquiry and whether the process afforded to Ms. Rucker and others in that regard was adequate to insure their waivers were truly

---

[4] See also *Stephens v. State*, 630 So.2d 1090, 1091 (Fla. 1994), where the Florida Supreme Court held that a probationer could not be imprisoned for failing to pay court-imposed restitution without the court first determining that the probationer had the ability to pay but willfully refused to do so, even if the probationer previously agreed to waive a future determination of his ability to pay.

**ORDER RE MOTIONS FOR
PARTIAL SUMMARY JUDGMENT- 10**

knowing, intelligent and voluntary. A court has a clear duty to insure that those who appear before it and indicate they wish to waive constitutional rights do so knowingly, intelligently and voluntarily. This is the issue to which the parties and the court will now turn their attention in this litigation.

### III. CONCLUSION

For the reasons set forth above, the Defendant's Motion For Partial Summary Judgment (ECF No. 14) is **GRANTED** and the Plaintiffs' Cross-Motion For Partial Summary Judgment (ECF No. 18) is **DENIED**. This court holds as a matter of law that the right to a contemporaneous *Bearden* hearing prior to incarceration for LFO violations may be waived.

**IT IS SO ORDERED**. The District Executive shall forward a copy of this order to counsel of record.

**DATED** this   25th   of November, 2013.

*s/Lonny R. Suko*

LONNY R. SUKO
Senior United States District Judge

**ORDER RE MOTIONS FOR PARTIAL SUMMARY JUDGMENT- 11**